# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Khamsay Xayamonty, | Civ. No. 20-1566 (ECT/BRT) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Warden J. Fikes, FCI-Sandstone, | |
| Respondent. | |

Khamsay Xayamonty, *pro se* Petitioner.

Ana H. Voss, Esq., Ann M. Bildtsen, Esq., and Chad A. Blumenfield, Esq., United States Attorney's Office, counsel for Respondent.

BECKY R. THORSON, United States Magistrate Judge.

This matter is before the Court on Petitioner Khamsay Xayamonty's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. No. 1, Petition.) Therein, Petitioner asserts that Bureau of Prisons ("BOP") officials abused their discretion and violated the Eighth Amendment by failing to commit Petitioner to home confinement. Petitioner seeks an order directing the BOP to enlarge Petitioner's incarceration to either home confinement or a residential re-entry placement center or, in the alternative, an order directing the BOP to reassess Petitioner's eligibility for the same. For the reasons that follow, this Court recommends the Petition be denied.

## BACKGROUND

### I. Petitioner's Incarceration

Petitioner is currently incarcerated at the Federal Correctional Facility in Sandstone, MN ("FCI-Sandstone"), where he is serving a 108-month term of imprisonment for a conviction of Drug Conspiracy under 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B). (Doc. No. 7, Kensy Decl. ¶ 22, Ex. E at 2.) He has a projected release date of February 12, 2024, via good conduct time. (*Id.* ¶ 22, Ex. E at 1.)

On May 1, 2020, Petitioner requested that he be reviewed for placement in home confinement pursuant to the CARES Act. (*See* Petition, Ex. 1 at 1.) On June 24, 2020, Petitioner was deemed ineligible for home confinement "because he has no COVID-19 risk factors, as established by the CDC . . . . [and] has a serious history of violence, to include assault and reckless use of force." (Kensy Decl. ¶ 23.) Petitioner filed the present Petition for Writ of Habeas Corpus on July 13, 2020. (*See* Petition.) Respondent filed a Response on August 24, 2020 (Doc. No. 6, Resp.), and Petitioner filed a letter to the Court on September 23, 2020, regarding the spread of COVID-19 at FCI-Sandstone. (Doc. No. 9, Letter.)

### II. COVID-19 and the CARES Act

In January 2020, the Centers for Disease Control and Prevention began issuing Guidelines to the American public to protect against COVID-19. On March 26, 2020, the Attorney General issued guidance for "prioritizing" home confinement for "at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities."

(Kensy Decl., Ex. A ("March 26 Memorandum").) That memorandum directed the BOP to consider the totality of the circumstances for each individual inmate, the statutory requirements for home confinement, and a non-exhaustive list of discretionary factors:

- The age and vulnerability of the inmate of COVID-19, in accordance with the Centers for Disease Control and Prevention (CDC) guidelines;

- The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;

- The inmate's conduct in prison, with inmates who have engaged in violent or gang-related actively in prison or who have incurred a BOP violation within the last year not receiving priority treatment under this Memorandum;

- The inmate's score under PATTERN[1], with inmates who have anything above a minimum score not receiving priority treatment under this Memorandum;

- Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximum public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility;

- The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community. Some offenses, such as sex offenses, will render an inmate ineligible for home detention. Other serious offenses should weigh more heavily against consideration for home detention.

---

[1]     PATTERN is the Prisoner Assessment Tool Targeting Estimated Risk and Needs. The BOP states that this is "[t]he risk and needs assessment system . . . used to determine the risk and needs of inmates in BOP custody. Specifically, the system determines the recidivism risk of each inmate and assigns a recidivism risk score of minimum, low, medium, or high risk. The system also assesses each inmate and determines, to the extent practicable, the inmate's risk of violent or serious misconduct." First Step Act - Frequently Asked Questions, available at https://www.bop.gov/inmates/fsa/faq.jsp#fsa_system (last visited October 14, 2020).

3

(*Id.* at 1–2.) The March 26 Memorandum requires that "the BOP Medical Director, or someone he designates, will, based on CDC guidance, make an assessment of the inmate's risk factors for severe COVID-19 illness, risks of COVID-19 at the inmate's prison facility, as well as the risks of COVID-19 at the location in which the inmate seeks home confinement." (*Id.* at 2.) The Attorney General states that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19, or put the public at risk in other ways." (*Id.*)

The President signed the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2) (2020) into law on March 27, 2020. The CARES Act states in relevant part:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

Pub. L. No. 116-136, § 12003(b)(2) (2020). In a subsequent memorandum dated April 3, 2020, the Attorney General directed the BOP to "give priority in implementing these new standards to the most vulnerable inmates at the most affected facilities." (Kensy Decl., Ex. B ("April 3 Memorandum").)

The April 3 Memorandum directs BOP officials to "immediately review all inmates who have COVID-19 risk factors, as established by the CDC" at all "facilities where you determine that COVID-19 is materially affecting operations." (*Id.* at 2.) The Attorney General clarifies that "now that I have exercised my authority under the CARES

4

Act, your review should include all at-risk inmates—not only those who were previously eligible for transfer." (*Id.*) The April 3 Memorandum requires that BOP officials' "assessment of these inmates should thus be guided by the factors in [the] March 26 Memorandum, understanding, though, that inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which COVID-19 is materially affecting their operations." (*Id.*) The April 3 Memorandum concludes by observing that "while I am directing you to maximize the use of home confinement at affected institutions, it is essential that you continue making the careful, individualized determinations BOP makes in the typical case. Each inmate is unique and each requires the same individualized determinations we have always made in this context." (*Id.* at 3.)

## ANALYSIS

Petitioner argues that the BOP abused its discretion in its determination that he is not eligible for home confinement. (Petition 6–8.) Respondent disagrees. (*See* Resp.) For the reasons that follow, this Court recommends that the Petition be denied.

Pre-release placement decisions, such as transfers to home confinement, are committed to the BOP's sole discretion. *United States v. Small*, No. CR 08-107 (DWF/FLN), 2020 WL 4904731, at *2 (D. Minn. Aug. 20, 2020) (citing 18 U.S.C. § 3624(c)(4)). The CARES Act did not remove that discretion, it merely granted the Attorney General authority to expand the class of inmates eligible for release on home confinement under 18 U.S.C. § 3624(c)(2). *See id.* (citing *United States v. James*, Cr. No.15-255 (SRN), 2020 WL 1922568, at *2 (D. Minn. Apr 21, 2020)). "Courts have

consistently held that placement questions are not reviewable." *Small*, 2020 WL 4904731, at *3 (citing cases).

Accordingly, because the BOP's determination that Petitioner should not be released to home confinement is a placement decision, this Court finds that it is a decision that lies solely within the BOP's discretion. *See* 18 U.S.C. § 3624(c); *Small*, 2020 WL 4904731, at *3; *James*, 2020 WL 1922568, at *2. Accordingly, this Court recommends that the Petition be denied because the Court lacks authority to consider Petitioner's request.

Furthermore, even if the Court construed Petitioner's request as a motion for compassionate relief pursuant to § 3582(c)(1)(A), release under these facts is not warranted. Petitioner is 36 years old and has no underlying conditions that place him at high risk of serious illness due to COVID-19. *See* CDC, Coronavirus Disease 2019: People Who Are At Higher Risk, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last accessed October 6, 2020). Moreover, this Court agrees with the findings of other courts that "mere speculation of the possibility of contracting the virus" is insufficient to justify release under § 3582(c)(1)(A). *United States v. Fry*, No. 11-cr-141 (PAM/KMM), 2020 WL 1923218, at *1 (D. Minn. Apr. 21, 2020) (citation omitted); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (stating "the mere existence of COVID-19 in society and the possibility that it may spread to a particular a particular prison alone cannot independently justify compassionate release"). Instead, federal courts have required that an inmate demonstrate both "a particularized susceptibility to the disease" and "a

6

particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 838 (E.D. Va. 2020) (collecting cases). Here, Petitioner has established neither of these elements.

Petitioner also asserts that the BOP was deliberately indifferent to his needs in violation of the Eighth Amendment, and alleges that the BOP is prioritizing the release of white prisoners over minorities. (Petition 8; Letter 1.) These claims lack merit. First, if Petitioner wishes to challenge the conditions of his confinement under the Eighth Amendment, such a claim must be raised in a civil rights action under 42 U.S.C. § 1983, not a habeas proceeding. *See Spencer v. Haynes*, 773 F.3d 467, 469–70 (8th Cir. 2014) (explaining that a habeas petition may only be used to challenge the fact or length of confinement, not to challenge the conditions of that confinement). And second, to the extent that Petitioner wishes to assert an equal protection claim, that claim fails. "[T]he first step in an equal protection case is determining whether the plaintiff has demonstrated that [he] was treated differently than others who were similarly situated to [him]." *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994). Here, Petitioner has not identified any similarly situated inmates who were treated differently. It follows that Petitioner has failed to allege a violation of his equal protection rights.

For all the foregoing reasons, this Court recommends that the Petition for Writ of Habeas Corpus be denied.

## RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that:

1. Petitioner's Petition for a Writ of Habeas Corpus (**Doc. No. 1**) be **DENIED**.


Dated: October 14, 2020                     *s/ Becky R. Thorson*
                                                               BECKY R. THORSON
                                                               United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within fourteen (14) days after being served a copy" of the Report and Recommendation. A party may respond to those objections within fourteen (14) days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).